UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERIC W. BRYSON,

        Plaintiff,                    Case No. 15-cv-12352

v                                         Honorable Thomas L. Ludington
                                            Magistrate Judge Stephanie Dawkins Davis

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**ORDER SUSTATINING DEFENDANT'S OBJECTION, ADOPTING IN PART AND REJECTING IN PART THE REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND <u>AFFIRMING THE DECISION OF THE COMMISSIONER</u>**

On June 30, 2015 Plaintiff Eric W. Bryson filed an appeal of the Commissioner's denial of his claim for Title II Disabled Adult Child Benefits ("DAC") and his preemptive application for Social Security Income ("SSI"). Compl., ECF No. 1. Plaintiff Bryson and Defendant Commissioner of Social Security each filed motions for summary judgment. ECF Nos. 11, 12. On August 8, 2016 Magistrate Judge Stephanie Dawkins Davis authored a Report and Recommendation recommending that the Administrative Law Judge's ("ALJ's") decision be affirmed in part and reversed in part, and that the case be remanded to the ALJ for further proceedings consistent with the opinion. *See* ECF No. 13. Defendant Commissioner timely filed an objection. ECF No. 14.

Pursuant to a de novo review of the record, Defendant Commissioner's objection will be sustained, and the report and recommendation will be adopted in part and rejected in part.

Plaintiff's motion for summary judgment will be denied, Defendant's motion for summary judgment will be granted, and the decision of the Commissioner will be affirmed.

## I.

Plaintiff Eric Bryson was born April 27, 1989 and was 21 years old at the time of his alleged disability onset. *See* TR. 16, 35. He suffers from a severe learning disability and borderline intellectual functioning. While his natural mother is living, he was adopted by his grandmother, who he lives with in Detroit. Tr. 36-37, 43. Bryson completed the seventh grade but was unable to complete the eighth grade despite attempting to do so at numerous schools. Tr. 39. He also failed an attempt to obtain a General Education Degree. Tr. 37-39. While he previously obtained a driver's license, it was suspended after Bryson received a number of tickets which he did not pay. Tr. 35-36. Bryson has never attempted to work, and so has no past relevant work experience. Tr. 38, 147.

Bryson previously applied for child's insurance benefits and supplemental security income benefits on February 9, 2009. That claim was denied on June 9, 2009, and Bryson did not appeal. Tr. 13.

### A.

The record demonstrates that Plaintiff Bryson began treating with a therapist, Dr. Nagy Kheir, M.D., on December 5, 2011 at the Oakland Psychological Clinic. Tr. 215-17. During that visit, Bryson informed Dr. Kheir that he experienced auditory hallucinations and was paranoid that something bad would happen. Tr. 215. His grandmother informed Dr. Kheir that Bryson had a history of learning problems, anger issues, and that he did not sleep well. *Id.* She also claimed that Bryson was often depressed. *Id.* Dr. Kheir's notes reflect that Bryson appeared neat, cooperative, and coherent. Tr. 216. Bryson attended a follow-up appointment with Dr.

Kheir on January 2012, at which time he was prescribed Seroquel and Paxil for depression and insomnia. Tr. 214. Bryson proceeded to meet with Dr. Kheir semi-monthly through August of 2012. Tr. 199-203. During this time Plaintiff continued to report sleeplessness, auditory hallucinations, and paranoia, and inconsistently took his medication. Tr. 200-203. Nonetheless, Dr. Kheir noted that Bryson generally appeared calm and cooperative, although Bryson became angry when questioned about his medical compliance. Tr. 200.

Bryson also met with a licensed master social worker, Lisa White, L.M.S.W., on January 20, 2012. Tr. 204. At the appointment Bryson complained of depression, sleep disturbances, low self-esteem, anxiousness, and irritability. *Id*. He also represented that he did not get along well with others and experienced social anxiety, although he had a girlfriend at the time and had a number of lifetime friends. Tr. 204, 208, 209. He complained of auditory hallucinations, but Ms. White noted that Bryson was aware the voices were not real. Tr. 204, 206. Ms. White also noted that he did not have any past or present homicidal or suicidal thoughts, and that he did not have a history of assaultive behavior, despite the fact that he believed he had anger problems. Tr. 205, 212. Finally, he represented that he wanted to get his G.E.D. and continue his education. Tr. 210. All in all, White rated his overall functionality as a 5 on a scale of 10, and a Global Assessment of Functioning ("GAF") score of 50. Tr. 208, 211.

In June of 2012, Ms. White completed a "Psychiatric/Psychological Medical Report," which Dr. Kheir co-signed. Tr. 193-198. The report largely repeated the findings of Ms. White's January evaluation, noting that Bryson reported depression, poor sleep, anxiety, impulsiveness, anger and flashes of voices in his head. Tr. 193. The report noted that the prescribed medication helped somewhat with his symptoms. *Id*. The report noted that he had a girlfriend and lifelong friends, and believed that he could get along with anyone. Tr. 195. It also noted that Bryson

played pool, basketball, and football, and appeared neatly dressed and with good hygiene. Tr. 195. Ms. White assessed him as having self-esteem ranked at 4 or 5 out of 10, and functionality ranked at 5 out of 10. Tr. 195-96. Again, she assigned him a GAF score of 50.

**B.**

On June 3, 2012 Plaintiff Bryson filed his current application for DAC. TR. 137-139 That same day he protectively filed his current application for SSI. Tr. 131-136. Through his claims Plaintiff Bryson alleges he is disabled based on his learning disability, borderline intellectual functioning, psychosis, and depressive disorder. With regard to his DAC claim Bryson alleges an onset date of July 1, 2009. Tr. 137. With regard to his SSI claim Bryson alleges an onset date of April 27, 1996. Tr. 131.

On October 22, 2012 a state agency psychologist, Dr. Edward Czarnecki, Ph.D., reviewed the record evidence, and opined that Bryson's psychosis and depression caused moderate limitations with regard to the activities of daily living, social functioning, concentrating, persistence, or pace. Tr. 70-80. However, he opined that Bryson's ability to carry out short and simple instructions, to perform activities within a schedule, and the ability to complete a normal workday or workweek without unreasonable number or length of rest periods was not significantly limited. Tr. 72. Dr. Czarnecki noted that the record demonstrated that Bryson had a GAF of 50 and low average school IQ scores. Tr. 73. Based on Dr. Czarnecki's report and the record evidence, the Commissioner initially denied Bryson's claims on October 22, 2012. Tr. 88-109.

**C.**

Plaintiff requested an administrative hearing, which was held on February 13, 2014. In the meantime, Plaintiff Bryson continued to meet with Dr. Kheir semi-monthly through the end

of 2013. He also began meeting with licensed master social worker Barbara McCloud on February 5, 2013 after he was referred to her by other social workers for his depression, fatigue, overeating, low self-esteem, difficulty concentrating, and irritability. Tr. 262-264. During the first visit he informed her that his auditory hallucinations had been telling him to destroy property, but that he had never acted on them. Tr. 251. She noted that he presented as depressed, but had no symptoms of psychosis. Tr. 251-52. She further observed that he had to ask repeated questions and reported losing concentration, but that he made eye contact and appeared to have good grooming and hygiene. Tr. 252. He attended regular therapy sessions with Ms. McCloud through January 2014. While both she and Dr. Kheir noted an improvement in Bryson's symptoms throughout 2013, he presented to Ms. McCloud in a depressed and irritable mood on January 10, 2014 after breaking up with his girlfriend.

At the February 13, 2014 hearing, the ALJ questioned Bryson about his daily routine, education, work experience and medical history. Bryson testified that he had difficulty concentrating, and had some difficulty getting along with other people. Tr. 40-41. He testified that he did not have many friends, but did have cousins. Tr. 43. He spent his week days accompanying his grandmother to her place of work at a foster care home, which generally spanned from 9:00 AM to 9:00 PM. Tr. 41-42. During his time there he usually slept and spent time on the computer watching YouTube videos. Tr. 42-43. He was occasionally able to help his grandmother with small tasks such as taking out the garbage. Tr. 42. He testified that on weekends he sometimes spent time with his father and younger sister and sometimes played basketball with his step-brother. Tr. 45, 47. Otherwise he spent time with his grandmother. Tr. 45. Bryson testified that at night he occasionally watched the news, and he enjoyed watching

sports. Tr. 44, 48. He also testified that he could cook "slightly." Bryson testified that he did not want to be considered disabled and that he wanted to achieve greater independence. Tr. 42-43.

Bryson testified that he heard voices since he was 15 or 16 years old for which he took daily medication and attended monthly visits with a psychologist. Tr. 38-39. The voices sometimes took the form of his deceased grandfather talking to him, and sometimes voices telling him random things in the morning. Tr. 44. He testified that the voices never told him to harm anybody or to do anything bad. *Id*. When asked if he had any physical problems or pains, he testified only that his thumbs hurt because he had a nervous habit of biting them. Tr. 48. He also testified that he occasionally overate due to his medication. Tr. 49. He did not testify to any other physical maladies or pain.

After confirming that Plaintiff Bryson had no past relevant work, the ALJ posed the following hypothetical to the Vocational Expert:

> Assuming a person of the same age, education, and work experience as this claimant, they are restricted to working at all exertional levels. There are no exertional limits. However, they should not climb ladders, ropes, scaffolds. They should avoid all exposure to hazardous machinery and unprotected heights. The work is limited to unskilled jobs, as defined in the Dictionary of Occupational Titles, with specific vocational preparation levels of 1 or 2, with simple routine tasks; no production rate work; no more than occasional interaction with the general public, coworkers, and supervisors; with no tandem tasks required. Given those restrictions, are there jobs in the region or the nation that such a hypothetical could perform?

Tr. 51-52. The Vocational Expert replied that, according to the DOT, such an individual could perform work as a cleaner, a hand packager, an assembler, or a store laborer. Tr. 52.

The ALJ issued a written opinion on February 24, 2014 finding that res judicata applied to Bryson's claims of disability preceding the date Bryson's previous claim was denied (or any time prior to June 9, 2009) due to his failure to appeal the denial of his previous claim. Tr. 13. The ALJ also found that Bryson was not disabled from June 10, 2009 to February 24, 2014

because his severe impairments did not meet or medically equal any listed impairment, and because, based on Bryson's RFC, there were jobs in the economy that he was able to perform. Tr. 13-26. This finding was based on the following RFC finding:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant should avoid climbing ladders, ropes or scaffolds, hazardous machinery, and unprotected heights. Additionally, he is limited to unskilled jobs as defined in the DOT with SVP levels of 1 or 2, with simple and routine tasks, and does not involve production rate work or tandem tasks. He should have only occasional contact with the general public, co-workers, and supervisors.

Tr. 19. In reaching this RFC determination the ALJ gave "some weight" to the opinion of Dr. Czarnecki, finding that he was neither a treating nor examining source and that he had provided his assessment before the completion of the record. Tr. 23. The ALJ specifically considered the evidence related to Bryson's treatments with Dr. Kheir and Ms. McCloud that post-dated Dr. Czarnecki's assessment. Tr. 20-22. The ALJ also gave little weight to Bryson's GAF score, finding that the other record evidence was more informative as to his ability to hold a job. Tr. 24.

Plaintiff requested a review of the ALJ's decision, which was denied by the Appeals Council on May 8, 2015. Tr. 1-5.

**D.**

Bryson responded by filing this appeal on June 30, 2015. Compl., ECF No. 1. He then filed a motion for summary judgment on December 16, 2015 arguing that the ALJ improperly assessed his Residual Functional Capacity ("RFC"), that the ALJ's findings were not supported by substantial evidence, and that the ALJ erred in finding that res judicata applied for all claims preceding July 9, 2016. *See* Pl. Mot. Summ. J., ECF No. 11. Defendant Commissioner filed a motion for summary judgment on January 1, 2011, arguing that the ALJ's decision should be affirmed. *See* Def.'s Mot. Summ. J., ECF No. 12.

On August 8, 2016, Magistrate Judge Stephanie Dawkins Davis issued a report and recommendation. ECF No. 13. Reviewing the Commissioner's decision under a "substantial evidence" standard, the magistrate judge determined that the ALJ's physical RFC determination was based on substantial evidence. However, the magistrate judge found the ALJ erred in considering the "stale" opinion of a State agency psychologist, Dr. Edward Czarnecki, in determining Bryson's mental RFC. For this reason, the magistrate judge determined that the ALJ's RFC finding was not supported by substantial evidence. The magistrate judge therefore recommended that Bryson's motion for summary judgment granted in part and denied in part, that Defendant Commissioner's motion for summary judgment be granted in part and denied in part, and that the ALJ's decision be affirmed in part and reversed in part. She concluded that the matter should be remanded for additional proceedings.

## II.

Under the Social Security Act ("The Act"), a claimant is entitled to disability benefits if he can demonstrate that she is in fact disabled. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Disability is defined by The Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.05. A plaintiff carries the burden of establishing that he meets this definition. 42 U.S.C. §§ 423(d)(5)(A); *see also Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 459 (6th Cir. 2012).

Corresponding federal regulations outline a five-step sequential process to determine whether an individual qualifies as disabled:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that he

> suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 719 (6th Cir. 2012) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)). Through Step Four, the plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work. At Step Five, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

When reviewing a case under 42 U.S.C. § 405(g), the Court must affirm the Commissioner's conclusions "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citations omitted). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

**III.**

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. See Fed. R. Civ. P. 72(b)(2). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). If objections are made, "[t]he district judge must determine de novo any part of the magistrate

judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).

Defendant Commissioner now raises a single objection to the magistrate judge's report and recommendation, arguing that the magistrate judge erred in finding the ALJ's mental RFC assessment improper. Specifically, Defendant argues that the magistrate judge erred in finding that the ALJ erred in assigning some weight to the opinion of a State agency psychologist, Dr. Czarnecki and independently assessing Plaintiff Bryson's mental health records and testimony. Relying on a 2008 case out of the northern district of Ohio, the magistrate judge determined that "this matter must be remanded so that the ALJ can obtain an updated opinion of a medical advisor to assess the severity of [P]laintiff's mental impairments and any resulting functional limitations, as well as to conduct the assessment required by 20 C.F.R. § 416.920a(e)."

As noted above, an ALJ's decision must be based on substantial evidence. "Substantiality of the evidence must be based upon the record taken as a whole." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). Additionally, "an ALJ should resist the temptation to substitute the ALJ's own interpretation of medical records for that of a physician who has examined the records." *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015).

However, a plaintiff carries the burden of establishing that he meets the definition of disability. 42 U.S.C. §§ 423(d)(5)(A); *see also Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 459 (6th Cir. 2012). There is no principle of Sixth Circuit law that requires an ALJ to seek

out a physician's medical opinion where the plaintiff has not offered one. *Id. See also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726-27 (6th Cir. 2013). Where a plaintiff has not offered any medical opinion interpreting medical findings, an ALJ does not improperly substitute his own interpretation of the medical records in rendering an RFC finding, as the regulations *require* the ALJ to evaluate the medical evidence to determine if a claimant is disabled. *See Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x 435, 439 (6th Cir. 2010); *See also* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). This is particularly true is a case such as the present one where the ALJ is not interpreting raw medical data or tests, but is instead analyzing the written opinions of a treating therapist and the Plaintiff's own testimony. As noted by the magistrate judge "[i]t is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, *including that of the claimant*." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (emphasis added). Furthermore, the Sixth Circuit has held in a published opinion that an ALJ does not err in relying on the opinion of a state medical consultant whose opinion was issued before the record was complete where the ALJ independently considered subsequent records. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513-514 (6th Cir. 2010).

The ALJ's mental RFC determination is supported by substantial evidence. As extensively set forth by the ALJ in his opinion, Bryson's mental condition, as determined by his treating therapist Dr. Kheir and his social worker Ms. McCloud, reflect steady improvement throughout 2013. Tr. 21-24. For example, in a May 2013 appointment Bryson noted that while he continued to experience mild hallucinations, his medications kept him balanced, and he specifically denied all other symptoms, such as anxiety, sleep disturbances, or depression. In a December of 2013 Bryson represented that "everything is good" and that he had been sleeping through the night. Tr. 284. The only exception to this upward trend appears to be Bryson's

January 2014 meeting with Ms. Cloud, before which he had recently broken up with his girlfriend. Tr. 272-278. His subsequent testimony at the February 13, 2014 hearing demonstrates that he is able to perform simple tasks such as taking out the garbage and simple cooking. Tr. 32-55. His testimony also demonstrates that he maintains good relationships with family members. *Id*. The ALJ's RFC finding properly accounts for Bryson's difficulty in concentrating, social anxiety, and mild depression by limiting him to unskilled jobs consisting of simple and routine tasks that require only occasional contact with others. Tr. 19. Because the ALJ's mental RFC determination is supported by substantial evidence, Defendant's objection will be sustained.

### IV.

Accordingly, it **ORDERED** that Defendant Commissioner's objection, ECF No. 14, is **SUSTAINED.**

It is further **ORDERED** that the magistrate judge's report and recommendation, ECF No. 13, is **ADOPTED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that Plaintiff Eric W. Bryson's motion for summary judgment, ECF No. 12, is **DENIED**.

It is further **ORDERED** that Defendant Commissioner's motion for summary judgment, ECF No. 11, is **GRANTED**.

It is further **ORDERED** that the Commissioner of Social Security's decision is **AFFIRMED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 28, 2016

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 28, 2016.

                              s/Kelly Winslow for
                              MICHAEL A. SIAN, Case Manager